LOWRY, *et ux. vs.* TIERNAN & WILLIAMSON.—June, 1827.

D and L being infants and contemplating a marriage; the former (the intended wife,) being possessed of a large amount of *United States* stock, a few days before her marriage transferred the entire legal estate therein to trustees by deed, who were to permit her to receive during life the dividends and profits of the stock. She reserved no power over the principal, except the *jus disponendi* by last will and testament, to take

effect in case she died without leaving a child or descendant. After their marriage and coming of age, on a bill filed by them against the trustees praying to modify the trust, by having a part of the trust funds invested under the direction of the husband in the purchase of a farm—*Held,* that whether the deed was valid or fraudulent, the court could not change the trust; that if valid, it had given the parties no control over the principal fund, and a court of equity did not possess any power to change and modify trusts contrary to the manifest intention of the deeds creating them; or if a fraud on the rights of the intended husband, though the court might set the deed aside, yet it could make no terms with a fraudulent instrument.

APPEAL from a decree of the Court of Chancery, dismissing the bill of the complainants, in that court, (the now appellants.) The bill stated, that *Sally Ann Lowry,* (late *Sally Ann Dooris,)* the wife of *James Lowry,* the other complainant, on the 18th of September 1824, they then being single, and contemplating a marriage, and the said *Sally Ann* being possessed of, and entitled, to the sum of $8,200, bearing interest at six *per cent per annum* from the 1st of July 1824, inclusively, payable quarter yearly, being stock created in pursuance of an act of congress, as per certificate, &c. That the said *Sally Ann,* being desirous of having the said stock and money placed at her own sole disposal, whether sole or married, she did on the said 18th of September 1824, make and execute to *Luke Tiernan* and *David Williamson,* junior, and the survivor of them, &c. a deed of assignment of the said stock, in trust, to pay over the interest on the said stock to the said *Sally Ann,* when and as the same should be received, at all times during the term of her natural life, whether she be sole or covert, so that neither the principal debt, nor the interest thereof, should at any time be liable to the disposition or control of any husband that she might have, nor be liable or bound for his debts, &c. And from and after her decease, in trust for all her children and descendants, if any she might have, that should survive her, to be equally divided, &c. But if she should depart this life without leaving a child or descendants, then in trust, as to the said debt or principal sum, for the use of such person or persons as the said *Sally Ann,* by her last will and testament may name, to have and be entitled thereto; and in default of such nomination, then in trust for the right heirs of the said *Sally Ann.* And in either case to be transferred, at the de-

cease of the said *Sally Ann* to the person or persons entitled, &c. as by the deed of assignment and certificate of stock in the possession of the said *Tiernan* and *Williamson*, will more fully appear. *Prayer*, that they may be produced, &c. The bill further states, that the said intended marriage between the complainants, was had and solemnized on the 21st of September 1824; and that they were both infants when the said deed of assignment was executed, and when the said marriage was had and solemnized between them; but they are now of full age. That the said stock is about to be extinguished by the *United States* by the payment of the said sum of $8,000. That the said *Sally Ann* is desirous of having a part of that sum invested, under the direction of her husband, in the purchase of a farm, &c. and that the uses and trusts expressed in the deed of assignment should be so altered or modified that *Tiernan* and *Williamson*, the said trustees, should hold the land, when purchased, and the balance of the said stock and money upon the following terms, viz. in trust, &c. That they have applied to *Tiernan* and *Williamson* to make the said purchase, and take a conveyance upon the uses and trusts before expressed, &c. But they replied, that being trustees they had no power of themselves to make any such purchase, or consent to a modification of the said trusts, &c. *Prayer*, that the said trustees be compelled to make the said purchase, &c. And for general relief. The answer of *Tiernan* and *Williamson*, the defendants, and now appellees, admit the several matters and facts set forth in the bill to be true. That they are mere trustees, without any interest, under the said deed of trust; and they did not feel themselves authorized to make or permit any application of the trust fund in their possession, and under their control, other than was authorized by the deed of trust. They exhibited the deed of trust, and also a copy of the certificate of stock, &c. The deed of assignment, as exhibited, is similar to that stated in the bill.

*Bland*, Chancellor, (July 1825.) In this case although it does not appear from any distinct expressions in the deed from *Sally Ann Dooris* to the defendants, that it was made in contemplation of a then intended marriage, yet from all the cir-

cumstances of the case, it must be so considered as a contract by which an infant may be bound, because of its being ancillary to her contract of marriage. In this case *Sally Ann* must be bound by this deed, although made by her when under age, unless some of those circumstances of unfairness or disadvantage can be shown, which would induce a court of equity to allow her to claim the privilege of her nonage. The instances where contracts of this kind have been vacated, are that the infant does not obtain, by the marriage settlement, an adequate consideration for her estate, which is tied up by it; or where the benefit conferred on her is vastly inferior to that which she would otherwise derive from her estate. But in this case it is difficult to see how her property could have been disposed of more to her benefit, during her coverture, than it is by this deed. If the court were in any way to enlarge her discretionary power over this property, that discretion would be exercised under the influence of her husband, and might cause a total loss. If the money secured by this deed, and directed to be placed in stock, were to be invested in land, and settled according to precisely the same uses, the land might be left unproductive to the wife. But there is a limitation over to the children of *Sally Ann*, who on her death will take as purchasers, and the court can make no change in this settlement, which may in any manner impair or destroy their interests—*Decreed*, that the bill be dismissed, with costs to the defendants. From this decree the complainants appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, STEPHEN, ARCHER, and DORSEY, J.

*Scott*, for the Appellants. The only question in this case is, whether a female *infant*, contemplating a marriage with a male infant, and making a voluntary settlement of her own estate, is bound by the settlement; or, whether it can be set aside after she becomes of age? He contended that such settlement was not binding upon her, and might be modified, or set aside, after she becomes of age; and cited 1 *Pow. on Cont.* 32, 54, *Com. on Cont.* 148. *Porter v Butler*, 3 *Harr. & M'Hen.* 168. *Davis v Jacquin & Pomerait*, 5 *Harr. & Johns.* 100. *Moses v Murgatroyd*, 1 *Johns. Ch. Rep.* 127. *Rogers & Wife*

*v Cruger*, 7 *Johns. Rep.* 557. *Rogers & Wife v Hurd*, 4 *Day's Rep.* 57. 1 *Fonbl.* 73, *(note y. )* *Harvey v Ashley*, 3 *Atk.* 613. *Opinion of Mr. Solicitor Dunning*, 1 *Harr. & M'Hen.* 568. *Drury v Drury*, 5 *Bro. Parl. Cas.* 570. S. C. 2 *Eden*, 59, 60. *Durnford v Lane*, 1 *Bro. Ch. Rep.* 106. *Williams v Williams*, *Ib.* 152. *Countess of Strathmore v Bowes*, 1 *Ves. jr.* 28. S. C. 2 *Bro. Ch. Rep.* 345. *Caruthers v Caruthers*, 4 *Bro. Ch. Rep.* 500, 506, *(and note.)* *Milner v Lord Harewood*, 18 *Ves.* 276.

*Chambers*, on the same side. The covenantor in the deed, being an infant, the general principle of incapacity to contract will apply, unless the case is brought within some of the exceptions to that principle. The only possible exception which it is conceived can be sought for, is that to which the chancellor has alluded, to wit, that it was a contract made in contemplation of marriage. A contract in contemplation of marriage, does not differ from any other contract, unless in either of two instances. *First*, in the instance of a jointure; and *Secondly*, in the case of a marriage contract. It is admitted that in these cases the parents or guardians of infants are permitted to act for them, and to guide their discretion, and that the acts of the parties being infants, when open, avowed, and with the knowledge of all the parties, are permitted to bind them by their contract, if in its terms fair and reasonable. In their case it is denied that any of these necessary incidents are found. Here is neither a jointure nor marriage settlement, nor is there the slightest evidence that the parents or guardians of the parties had any agency in the transaction, nor does it appear that the intended husband had the slightest intimation of what was in progress. It cannot be alleged that this transaction can be supported as a jointure. There are none of the characteristics of a jointure about it. It is not the act of the husband. It is made to trustees. It does not profess to bar her of dower in her husband's estate, nor is it of real estate. The case is clear of all the doctrine of jointure. *Bac. Abrid.* tit. *Jointure*, (B.) It cannot be considered as a marriage settlement, because not made with the assent of the intended husband, or by the authority, or with the knowledge of the parents or guardians of

either husband or wife. In *all* the cases cited, where a covenant, or transfer of property by infants on marriage settlement, have been held good, it will be found that full knowledge of the transaction existed with both the parties to the intended marriage, and with their friends; and the existence of such knowledge is made apparent by the deed of settlement itself. If no such notice exists on the part of the intended husband, it is a fraud upon his marital rights. 1 *Marsh.* 312. *Carleton v Earl of Dorset*, *Eq. Ca. Ab.* 59, and 2 *Vern.* 17. And this is the law in cases of adults. The legal principle is, that marriage is a *consideration* for which the husband expects to enjoy the rights over the wife's estate, which the law confers on him, and of which he cannot be deprived without his assent. The necessity of a knowledge of the facts by the parents or guardians of the infant, recognized by the Lord Chancellor in his judgment in *Harvey v Ashley*, 3 *Atk.* 611, 612, 614, and *Cannel v Buckle*, there cited. In *Slocombe v Glubb*, 2 *Bro. Ch. Rep.* 550, Mr. *Mansfield* denies that a male infant will be bound by a marriage settlement in which he joins as a party, and says "there is not even a *dictum* to that effect." The chancellor evades that question, and decides on the covenant as the act of the *adult* wife, with the *concurrence of the husband*. All his friends were advised of the settlement. If all these objections to the validity of the deed are unavailing, yet it is contended that the property, being conveyed to the sole use of the wife, it is in her power now to make a disposition of it. All the cases on this subject are cited and examined at large in *Jacques v Methodist Episcopal Church*, 17 *Johns. Rep.* 548. Should the suggestion occur that this fund, being the property of the wife, the court will see provision made for her before the fund is parted with, the answer is furnished by the bill. The proposal is to have the fund invested in such manner as to secure her fully.

No Counsel appeared for the Appellees.

ARCHER, J. delivered the opinion of the court. There is in effect a negation in the deed of settlement of any general disposing power in Mrs. *Lowry*. The entire legal estate is transferred to trustees, who are to permit her to receive, during life,

the dividends and profits of the stock. She has reserved no power whatever over the principal, except merely the *jus disponendi* by last will and testament, and that only in a certain event. She has completely parted with her power, dominion and control over her property, and has subjected it to specific purposes and trusts. With such a character impressed on the instrument, and viewing it as a good and valid deed, would a court of equity possess any power to change and modify those trusts contrary to the manifest intention of the deed of settlement? It would be of dangerous consequence to permit this to be done, and no authorities have been adduced by the appellant, to show, that in such a case, such power of modification exists. Suppose rights, on certain contingencies, had been reserved by the deed to persons *in esse*, could this court, upon a mere change in the will of the settler, unsettle, and absolutely disannul such contingent rights, unless a power had been reserved by the grantor?

Rights are reserved to such children as the grantor might have—they would take as purchasers—could this court strip such children, if *in esse*, of their fixed and absolute rights? Or if unborn would not the principle be the same?

. Mrs. *Lowry* is, besides, under the control of her husband, and the modifications proposed are for his benefit in part; for he becomes beneficially interested if the prayer of the bill be granted, on the happening of a certain contingency. Are we not, in the absence of all evidence to the contrary, under these circumstances, to found the presumption, growing out of the legal relations of the parties, that this change in the trust is sought to be attained by that influence and control which springs from their marital relations, and not from the free exercise of her own uncontroled will and desire?

Courts of equity should ever look to the object and intention of the parties making such settlement, which being here to place the property beyond the control of the husband, they should not, by the exercise of a most questionable jurisdiction, defeat the intentions of the settler, explicitly declared, when she was free, and by so doing place, even on contingencies, her property under the dominion of her husband.

Had the deed of trust given her a control over the principal

of the funds conveyed, (admitting tho validity of the deed,) had she any power of appointment conferred by it, it cannot now be questioned but that she would have possessed the power to divert the estate thus settled, from those whose rights were by the instrument made contingent; but the deed in this case gives the *jus disponendi* to her only in a single event—efficacy is given to her will should she die without children.

The bill presents the pretensions of the complainants in singular and contradictory attitudes. It represents the deed, at one moment as valid, and grounds, on such validity, the proposed and alleged equitable modification.

In the next, it is treated as an absolute nullity, growing out of the grantor's minority. If valid, her deed is the law, which she has prescribed for the regulation of her property, and possessing no power herself to alter, modify, or change that law, she cannot accomplish through a court of chancery what she could not herself directly effect.

If it be void, why ask this court to modify that which, at the election of the husband and wife, may be considered and treated as void? A court of equity should not be called upon to do nugatory acts. If the deed be void, the parties could effect their object in the courts of common law, or might avoid its stipulations by matter *in pais*.

But we would not wish to be considered as deciding the question, whether this deed be valid, or invalid; for whether it be the one or the other, we conceive we have no power to interfere.

Had the bill sought to invalidate the deed upon the ground that no redress could be had at law, the trust property being in government funds, and so beyond any legal process, the invalidity of the deed might then, perhaps, have become the subject of judicial inquiry in a court of equity. But the funds consist of the loan of 1812, and we are bound judicially to know, that funds have been set apart by government for the reimbursement of the proprietors of this stock; and we must presume that the trustees have received it, as it was their duty so to do under the deed of trust.

It has been intimated that this deed was a fraud on the marital rights of the husband, and therefore should be modified as

proposed. Were this so, a court of equity, with the necessary allegations, none of which are made in this case, might set it aside, but it could make no terms with fraud. It could not set up an instrument thus contaminated.

In every view which we are enabled to take of the case, (and we have given it our attentive consideration,) we are led to the conclusion that the object of the complainants cannot be attained in a court of equity.

DECREE AFFIRMED.