## MARY LLOYD TYSON, and others *vs.* JOHN H. B. LATROBE, Trustee, and others.

*Guardian and ward—Construction of Deed of Trust—Construction of Power to Sell, as embracing a Power to Mortgage—Equitable claim of the bona fide Lender of money upon a Void security to recover from the Owners of property upon which the money has been expended, to the extent of the Improvement of said property, or Addition to its Vendible value.*

Certain real estate on Lombard street in the City of Baltimore, was mortgaged by W. K. H. to G. C. as trustee under the will of N. P. T. and to R. A. T. as guardian of two infants, to secure the payment of $4500 to the trustee, and $4000 to the guardian. On the same day R. A. T. was substituted for G. C. as trustee for said children. A second mortgage was afterwards created on the same property for $7738.54 in favor of G. W. D. as trustee

Tyson, *et al. vs.* Latrobe, *et al.*

for the same children, subject to a life interest in R. A. T. who was their mother, and A. H. T. their father. The equity of redemption in said property was then conveyed by the mortgagor to the said R. A. T. in trust for said children upon the same trusts upon which the mortgage debt of $4000 was held by her, but with the power, *"to sell, and dispose of the trust property and premises aforesaid,"* and on receipt of the purchase money to convey the same to the purchaser; and after paying and discharging the mortgage liens on said property, with all interest thereon, to *"apply the residue of the purchase money, if any, by re-investment in such other property as to her may seem best,"* &c.; subsequently R. A. T. as trustee and as guardian, made a deed in fee of said property for the sum of $7500 upon condition, that the grantee should lease the same to her as trustee, for the term of 99 years renewable forever, at the annual rent of $450, and the same was so leased to her, as trustee under the deed from W. K. H. The leasehold interest so acquired by her, was then mortgaged by her to G. W. D. as trustee, to secure anew to him the sum of $7738.54, he having previously released his mortgage for that amount on the fee of said property, in order that said ground rent of $450 might be placed upon the property. This last mentioned mortgaged was afterwards released, and transferred to other property in which the said infants had a reversionary interest, and the leasehold interest created as above mentioned, was mortgaged by the said R. A. T. as trustee to J. H. B. L. trustee, to secure to him a loan of $7500, ostensibly for the purpose of improving other property in which said infants were interested, and it was stated in said last mentioned mortgage, that it was made in the exercise of the power contained in the deed of trust from W. K. H. On a bill filed by said infants after arriving at age, to have said mortgage to J. H. B. L. declared null and void, and to restrain a sale of the mortgaged property under a decree passed for that purpose, it was HELD:

1st. That R. A. T. in her capacity as guardian had no power to execute said mortgage.

2nd. That no such power was conferred upon her as substituted trustee under the will of N. P. T.

3rd. That said mortgage was clearly unwarranted by any of the terms or purposes expressed in the deed of trust from W. K. H.

4th. That as a general rule a power to sell and convey does not confer a power to mortgage.

5th. That questions of this sort must depend on the peculiar circumstances of the trust, and the intention of the parties as shown by the instrument.

Tyson, *et al. vs.* Latrobe, *et al.*

6th. That every deed of trust must receive a construction to effect the purposes contemplated, according to its terms and provisions

7th. That the mortgagee ought to be permitted to assert an equitable claim, if he so desire, by original bill against the complainants, for any application by the said trustee, of the money procured by said mortgage, to the improvement of other property in which the complainants were interested, so far as they may have been benefited thereby in the rendering such other property more valuable or productive to them by its permanent improvement, or addition to its vendible value.

APPEAL from the Circuit Court of Baltimore City.

On the 2nd of October, 1852, William Key Howard mortgaged a lot of ground on Lombard Street, in the City of Baltimore, to George Carey, as trustee under the will of Nathan P. Tyson, for the children of Alexander H. Tyson, and to Mrs. Rebecca A. Tyson, the mother and guardian of said children, they being infants. The mortgage was to secure the payment of $4500.00 to said trustee, and $4000.00 to said guardian. On the same day Mrs. Rebecca A. Tyson was substituted as trustee, in the place of George Carey. On the 30th of June, 1853, Howard created a second mortgage on said property, in favor of George W. Dobbin, as trustee for the same children, subject to a life estate therein of their said mother and father, to secure the sum of $7738.54. On the 30th of July, 1853, said Howard, conveyed his equity of redemption in said property, to the said Rebecca A. Tyson in trust for said children upon the same trusts upon which said mortgage debt of $4000.00, was held by her, but with the power to her "*to sell and dispose of the trust property and premises aforesaid,*" and on receipt of the purchase money to convey the same to the purchaser, and "after paying and discharging the mortgage liens on said property, with all interest thereon," to "apply the residue of the purchase money, if any, by re-investment, in such other property as to her may seem best," &c.; subsequently Mrs. Tyson, as trustee, and as guardian conveyed the

Tyson, *et al. vs.* Latrobe, *et al.*

Lombard Street property to the Convention of the Protestant Episcopal Church,—for the sum of $7500.00, upon condition that the grantee should lease the same to her as trustee for the term of 99 years, renewable forever, at the annual rent of $450.00, and the property was accordingly so leased to her as trustee under the deed to her from William Key Howard. · The leasehold interest so acquired by her was then mortgaged by her to George W. Dobbin, as trustee, to secure anew to him the sum of $7738.54, he having previously released his mortgage for that amount on the fee of said property, so that the same might be unencumbered when conveyed to the Convention of the Protestant Episcopal Church. This last mentioned mortgage was released as to this property, on the 14th of February, 1857, and transferred to certain property on Hanover Street, in which said infants had a reversionary interest. On the same day, the leasehold interest created as before mentioned was mortgaged by Mrs. Tyson, as trustee, to John H. B. Latrobe, surviving trustee of the Thornburg estate, to secure a loan of $7500.00, made to her ostensibly for the purpose of improving said property on Hanover Street; and it was stated in said last mentioned mortgage, that it was made in the exercise of the power contained in the deed of trust from William Key Howard.

The bill in this case was filed by Mary Lloyd Tyson, sometimes called Mary Nevin Tyson, and Nannie Key Tyson, the children of Alexander H. Tyson, now of age, to have said mortgage to J. H. B. Latrobe, declared null and void, and to restrain a sale of the mortgaged property under a decree obtained for that purpose.

The Court below, (PINKNEY, J.,) passed a decree dismissing the bill with costs; and the present appeal is taken by the complainants from this decree.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ROBINSON, J.

*Thos. W. Hall, Jr.* and *S. Teackle Wallis*, for the appellants.

The Court below erred in treating the question of the validity of the appellee's mortgage as depending wholly, (or even depending at all,) upon the language of Howard's deed to Mrs. Tyson, of July 30th, 1853. The opinion of the Court proceeds upon the assumption apparently that all Mrs. Tyson's powers in the premises were derived from that deed. In fact, she took nothing under it, but the mere release of her son's equity of redemption in property, upon which she already held a mortgage for $8500 in *trust*, for her daughters, as their *guardian* and *trustee* under N. P. Tyson's will. Her fiduciary relations and powers, so far as that property was concerned, were already fixed and defined, 1st, as guardian, by the law of the State under which she was appointed, and 2ndly, as trustee, by the terms of N. P. Tyson's will. Howard's deed could not possibly operate to change or modify her relations, or enlarge her powers as such guardian and trustee. In neither capacity had she any power to borrow $7500 upon the Lombard Street property, which she held in trust for her children solely. The mortgage given by Mrs. Tyson, trustee, upon the Lombard Street property, to secure repayment of said loan from the appellee to her husband and herself, was absolutely and necessarily *ultra vires* as against the appellants and their property, and void. *Dolan vs. Mayor of Baltimore, &c.,* 4 *Gill,* 394; *Huntt vs. Townshend,* 31 *Md.,* 336; *Lowry vs. Tiernan,* 2 *H. & G.,* 34.

The Court below is in error as to the proper construction of the power contained in Howard's deed supposing said deed to have worked any enlargement of Mrs. Tyson's powers as trustee. The power is, in terms, a power to *sell and re-invest.* No power to *mortgage* or create new liens is given. It is not sound doctrine to say that a power to sell ordinarily includes a power to mortgage, for the converse is the rule. Neither is a mortgage a conditional sale.

It is a security for the payment of money. 4 *Kent's Comm.*, 331; 1 *Sugden on Powers*, 513; *Stroughill vs. Anstey*, 1 *DeG. McN. & G.*, 645; *Haldenby vs. Spofforth*, 1 *Beav.*, 390; *Hicks vs. Hicks*, 5 *G. & J.*, 75; *Dougherty vs McColgan*, 6 *G. & J.*, 275.

The Court is further in error in the application of the principle adapted to the facts. If the principle were sound, the facts would not justify its application. No encumbrances were *paid off* by the mortgage to the appellee, nor was the money borrowed from the appellee raised for the purpose of paying off encumbrances. It was raised according to the express allegation of the answer and the assumption of the Court below, for the purpose of completing certain hotel improvements on the Hanover Street property. There is no conceivable theory applicable to the facts, which can uphold the imposition of an *entirely new burden* by way of mortgage as "a valid exercise of a power" given to a trustee, to "raise money" by way of mortgage, "to pay off encumbrances."

The Court below is also in error in supposing that the complainants, in order to entitle themselves to relief in equity, should have tendered a return of the money borrowed from the appellee. They did not borrow it. They did not authorize or consent to the borrowing. There is no evidence that the application which is alleged to have been made of the money borrowed, has enured, or ever will enure, to the pecuniary advantage of the appellants, to the extent of one dollar.

The Court erred in dismissing the bill as without equity, when one of the strongest possible cases was presented for the equitable interposition of the Court, for the purpose of doing justice, it may be, between all parties. The bill should have been retained, and opportunity given to the appellee, if desired, to prove his right, if any, to a substituted security upon the Hanover Street property, for that which he now claims upon the Lombard Street pro-

perty, and to which, it is submitted, he is entitled neither in equity nor in law.

[The argument on the facts is omitted.—REP.]

*John K. Cowen,* for the appellee.

The mortgage to the appellee of the Lombard Street property, is, to all intents and purposes, valid on several grounds.

1st. Because the power given by Howard's conveyance of the equity of redemption is, properly construed, a power to sell and raise money to pay off the encumbrances and invest the surplus, if any ; and a power to sell and raise money has always been held to include a power to mortgage. *Earl of Oxford vs. Earl of Albemarle,* 17 *Law Journal, (Equity) N. S.,* 396 ; *Stroughill vs. Anstey,* 17 *Jurist, (Part II,) N. S.,* 243 ; 1 *Sugden on Powers,* 552 ; 1 *Powell on Mortgages,* 60–61 *and* 65 ; *Coote on Mortgages,* (69 *Law Libr.,*) 204 ; 4 *Kent's Comm.,* 339, (1*st Ed.*) ; 2 *Equity Cases, Abridged,* 668, *pl.* 19 ; *Mills vs. Bank,* 3 *Peere Williams,* 9 ; *Ball vs. Harris,* 4 *Mylne & Craig,* 264.

2nd. Because the complainants are precluded by the proceedings which authorized Dobbin to release the mortgage on Lombard Street, from objecting to the transfer of the lien to Hanover Street, which these proceedings effected.

3rd. Because, even if the deed from Howard did not in terms authorize the mortgage to the respondent, yet a Court of Equity will under all the circumstances so construe the powers which the deed conferred as to bring the mortgage within its operation. 4 *Kent's Comm.,* 345 ; *Sugden on Powers,* 452, 453 ; *Skinner,* 427 ; *Moseley,* 140 ; 2 *Vesey, Jun.,* 336.

The distinction is between the power to sell " out and out," as where an attorney is appointed for the purpose of selling and paying over the proceeds, and when the sale is

for the purpose of effecting ulterior purposes, expressed on the face of the instrument authorizing it.   *Stroughill vs. Anstey*, 1 *De Gex, M. & G.*, 635, 647.

Where an estate is devised to trustees, charged, with debts, and subject thereto upon trusts for certain parties, so that a sale, though it may be authorized and required, is not the testator's sole object, the trustees may, for the purpose of paying the debts more properly mortgage than sell.   *Perry on Trusts*, 719 ; *Ball vs. Harris*, 4 *Mylne & Craig*, 264.

Not only, however, are the complainants precluded by the facts and by the proper construction of the deed from Howard to Mrs. Tyson of his equity of the redemption in the Lombard street property, from setting up the claim they now seek to establish, in disputing the validity of the mortgage to Latrobe, but they have no standing, on the shewing of their own bill in a Court of Equity.

No principle of the law is more familiar than this, that he who seeks equity must do equity.   And yet here, with a mortgage upon the Hanover street property, directed to be made to them on the petition of their mother herself, in a case where they are parties, and made under the direction of the Court accordingly, they are actually seeking to set aside a mortgage given to secure moneys borrowed for their use and on their account, with the sanction of the Court.   The proceeding "is nothing more than an attempt on the part of the *cestui que trust*, retaining the purchase money, to recover the estate."

The least the appellants could do, to secure a standing here, would be to tender to the appellee the money they borrowed from him, interest and costs, if they desired to vacate this mortgage,—or, at any rate, to tender him the security they hold on the Hanover street property.   They offer to do neither.   While suggesting this point, however, the appellee does not intend to forego, at all, his claim to the mortgage on the Lombard street property.

STEWART, J., delivered the opinion of the Court.

It appears, by the proceedings in this cause, that the complainants rightfully held the mortgage executed by Wm. Key Howard, on the Lombard street property, for the sum of $8,500—$4,000 of that amount having been derived from the will of N. P. Tyson, as legacies, in the hands of Rebecca A. Tyson, as their guardian—the remainder, $4,500, being held by her, as the substituted trustee, in pursuance of the provisions of the said will.

Mrs. Tyson, in her capacity as guardian, had no authority, by law, to execute the mortgage to the appellee, upon the property of the complainants, as her wards. The *Code, Art.* 93, *secs.* 167, 168, 173, *and Biddess vs. Thompson,* 2 *H. & G.,* 120, show with what strictness the guardian must act, in the management and disposition of the property of the ward.

Nor is it pretended that the will of N. P. Tyson, under the provision creating the trust, as to the funds belonging to the complainants, confers any authority upon Mrs. Tyson, the substituted trustee, to execute such mortgage.

But the deed from Wm. Key Howard to Mrs. Tyson, is relied upon by the respondent, as clothing her, as trustee, with the power to execute the mortgage in question.

That deed conveys Howard's equity of redemption in the Lombard street property, to Mrs. Tyson, and declares the purpose of the conveyance to be to vest the property in her in trust, for the benefit of the complainants, in equal portions, until they respectively arrive at the age of twenty-one; and then the share of each to be conveyed in fee.

Under it, Mrs. Tyson held the property as trustee, for the benefit of the complainants, the *cestuis que trust,* who, in equity, were actually seized of the freehold.

It also conveys to the trustee, the power and authority during the minority of the complainants, to sell the property ; and after discharging the mortgages thereon, to

apply any residue of the purchase money by re-investment in other property, for the uses and purposes of the trust.

The terms of the deed in question are plain upon their face, leaving slight margin for discretion in the trustee, or construction on the part of the Court, as to the purpose of the donor, or the extent of power conferred upon the trustee. Decisions of Courts in England or this country, or elementary authorities as to the construction of deeds of doubtful import, afford but little aid in the interpretation of this deed, where the meaning of the donor is so distinctly expressed. It is his intention as indicated by the provisions of the instrument, creating the trust, that must govern ; that is the great controlling principle in the construction of powers. 4 *Kent,* 374. No specific authority was given to mortgage the property ; nor was the exercise of such a power to be reasonably implied—such implication was not necessary for the full and complete discharge of the trust. On the contrary, it was inconsistent with the declared purposes of the trust. Without a sale was alone contemplated, there was no grounds for the direction to the trustee, as to the investment of any residue.

The execution of the power, if exercised by the trustee, necessarily imported the absolute or " out and out " disposition of the property ; the discharge of the mortgages resting thereon, from the proceeds, and the investment of the residue. Unless a sale was made, there could be no investment of a residue after the discharge of the mortgages.

This is the natural and reasonable construction to be given to the instrument.

It would not only be a loose but uncalled for construction, to undertake to give it other meaning.

There is no occasion for this, to enable the trustee fully, fairly and efficiently to discharge the trust, for the benefit of the *cestuis que trust.* A conditional sale, or a mortgage

of the property, would practically perpetuate the trust and contravene its object, and tend to defeat the power confided to the trustee.

Such disposition of the property, would accomplish the entire perversion of the intentions of the donor.

It is clearly unwarranted by any of the terms or purposes expressed in the instrument.

It does not appear from the record, that the execution of the mortgage in question by the trustee, and the receipt of the money under it, had the slightest reference to the purposes of the trust; but that the money was obtained for mere speculative objects; ostensibly for the improvement of certain other property on Hanover Street, in which the complainants were interested.

The provisions of the deed creating the trust, when brought to the notice of the Courts, cannot be disregarded.

It is their duty to see that they are fairly pursued by the trustee, especially where the right of infants or other persons under the peculiar guardianship of the Court are concerned.

A Court of Chancery has no authority to engraft upon the instrument, creating the trust, by construction, other conditions than those provided therein.

It can only afford assistance in carrying into effect, the *bona fide* purposes of the donor. *Lowry vs. Tiernan*, 2 *H. & G.*, 34.

Whether the mortgagee under the circumstances ought to be held answerable for the application of the funds, as having had notice of the nature of the trust and the intended misapplication thereof, constituting a breach of the trust on the part of the trustee, it is not material, from the view we have taken of the matter, to inquire.

The receipt of the money was intended for another purpose, than the discharge of the mortgage on the Lombard Street property, to wit: the improvement of the Hanover Street property, by the trustee, Mrs. Tyson.

The transaction seemed to have been founded upon the theory, that the change of Judge Dobbin's lien on the Lombard Street property, and its imposition upon the Hanover Street property, gratified the provisions of the deed of trust, in two particulars—the discharge of a lien on the Lombard Street, and an investment in the Hanover Street property. But independent of their having been no sale of the property, required by the deed, before such results could be accomplished; the scheme totally failed to effect any of the purposes of the deed. Judge Dobbin's mortgage on the Lombard Street property was not really discharged, but only shifted to or substituted by his mortgage on the Hanover Street property, in which the complainants held the reversionary interest; and in its place, Mr. Latrobe's mortgage, was a substituted lien on the Lombard Street property. The actual effect of which was to burden the property of the complainants, with two mortgages in place of one, both of which, to all intents and purposes operated, notwithstanding the change of the lien, as encumbrances upon the complainants; and whether it was on one parcel of property or another, could not be considered a gratification of the terms of the deed, by applying the proceeds of a sale or *quasi* sale of the property. If by such a process the complainants have been relieved from liens on their property, we have not been able to perceive that such has been the result.

But the respondent alleges and insists, that as the money derived from his mortgage was applied, or was so intended, to make improvements upon the property of the complainants, on Hanover Street; that ought by a Court of Equity, to be considered, a fair execution of the power of the trustees; at all events, sufficient, to bind the complainants, and estop them from setting up any equitable claim against his mortgage.

No such authority to improve property of the complainants was given by the terms of the deed nor can it be fairly implied.

In the absence of clear and specific authority from the deed of trust; or without the sanction of a competent Court; that any power was possessed by the trustee, to encumber the property of the complainants, for the purpose of investing the proceeds in uncertain and speculative improvement of their other property, is a proposition resting upon no substantial foundation; but is at war with all the settled principles governing the fiduciary relations between the trustee and *cestui que trust.*

A clear power to sell, generally for certain purposes, to wit: for the purpose of raising money, may carry the authority to mortgage, or to sell on condition; if it is apparent the purposes of the deed may be accomplished, in that mode; but it can never be inferred, in opposition to the terms of the deed, and where the nature of the trust requires a sale of the property *out and out;* and its absolute conversion can alone afford the means of effecting all the objects contemplated by the instrument.

Under such circumstances it is obvious the mortgage of the property is a nugatory act, beyond the scope of the authority of the trustee, and a manifest breach of the trust.

As a general rule, a power to sell and convey does not confer a power to mortgage.

Questions of this sort must depend on the peculiar circumstances of the trust, and the intention of the parties as shown by the instrument.

A trust with a power of sale "out and out," will not authorize a mortgage; and a trust for sale with nothing to negative the settlor's intention to convert the estate, absolutely, will not authorize the trustee to execute a mortgage. *Lowry vs. Tiernan,* 2 *H. & G.*, 34; *Dolan & Foy, vs. Mayor, &c., of Balt.,* 4 *Gill,* 394; *Huntt vs. Townshend,* 31 *Md.,* 338; 4 *Kent's Com.,* 378; *Albany Fire Ins. Co. vs. Bay,* 4 *Comstock,* 9; *Haldenby vs. Spofforth,* 1 *Beavan,* 390; *Stroughill vs. Anstey,* 1 *DeG. McN. & G.,* 645;

*Coote on Mortgages,* 59 *L. L.,* 80; *Perry on Trusts, sec.* 768; *Lewin on Trusts,* 315; *Hill on Trustees,* 714; 1 *Sugden on Powers,* 538.

Every deed of trust must receive a construction to effect the purposes contemplated according to its terms and provisions. The directions of the deed in question, would not be gratified in any particular, if the trustee were permitted to add another mortgage to those already resting upon the property of the complainants, and which it was the evident design of the deed, the trustee should discharge.

This was the sum and substance of the deed, and its natural and necessary import—and it would be foreign to its purpose to engraft upon it a power *ad libitum,* in the trustee, to mortgage the property therein embraced. The complainants having the equitable estate and being the sole beneficiaries, cannot be prejudiced by the unauthorized acts of their trustee; and the execution of the mortgage, between the trustee and Mr. Latrobe, was clearly *extra vires,* and a breach of the trust. The cases of *Price and Nisbet vs. Bigham's Ex'rs,* 7 *H. & J.,* 296; *Tiernan vs. Poor,* 1 *G. & J.,* 216; *Brundige vs. Poor,* 2 *G. & J.,* 1, referred to by respondent's counsel, relate to the *jus disponendi* of the wife, over her *separate* property, and do not illustrate the power of Mrs. Tyson as a mere trustee, in this case.

The Circuit Court ought to have declared the mortgage inoperative and void as against these complainants, and restrained the respondent from the execution of the decree of the 22nd February, 1861; a decree will therefore be passed reversing the decree of the Circuit Court, and vacating the said mortgage, so far as it might affect the Lombard Street property, belonging to the complainants; and perpetually enjoining the respondent from the execution of the said decree.

The bill does not charge, nor is there any proof, that there was want of good faith in the execution of the mort-

Tyson, *et al. vs.* Latrobe, *et al.*

gage, or wilful disregard of the interests of the complainants in the premises.

If the trustee and mortgagee acted under a mistake, as to the extent of the power of Mrs. Tyson to impose a lien, as trustee, on the property of these complainants, for the money advanced by respondent; and if, as alleged by the respondent, the money was applied to the improvement of the Hanover Street property, in which the complainants were and are interested; the ends of substantial justice would seem to require that the complainants should not be discharged, under the circumstances, from all equitable obligation arising therefrom.

We think the respondent ought to be permitted, without prejudice by the decree in this case, to assert an equitable claim, if he so desire, by original bill, against these complainants, for any application of the said money by the trustee, to the improvement of the Hanover Street property, in which the complainants are interested, so far as they may have been benefited thereby, in the rendering the said property more valuable or productive to them, by its permanent improvement or addition to its vendible value.

*Decree reversed.*

(Decided 12th May, 1875.)

BARTOL, C. J., filed the following dissenting opinion:

The question presented by this appeal is the validity of the mortgage dated February 14th, 1857, of certain property on Lombard Street, in the City of Baltimore, held by the appellee, J. H. B. Latrobe, Esq., as trustee. The mortgage was executed by Mrs. Rebecca A. Tyson, the mother of complainants, as trustee under a deed from W. K. Howard to her, dated July 30th, 1853. This last mentioned deed of trust is referred to in the mortgage, as containing a power to Mrs. Tyson of disposing of the property, and it is stated in the mortgage that the same is made in the execution of the power.

The validity of the mortgage is denied upon the ground that Mrs. Tyson, the trustee, had no power or authority to execute it. The question, therefore, which lies at the foundation of the case, is whether, by the true construction of the deed of July 30th, 1853, the power was conferred upon Mrs. Tyson to execute the mortgage in question, and this must be determined by the terms of the deed, and the nature and purposes of the trust thereby created. Before considering these, it may be proper briefly to state the origin and history of the title to the property. This will simplify the question and tend to avoid the confusion which has been caused by the complication of facts stated in the bill of complaint, many of which appear to me to have no material bearing upon the questions presented for the decision of the Court.

The Lombard Street property, described in the mortgage, was held by Nathan P. Tyson, in fee, and passed under his will, which empowered the executors to sell the estate, real and personal, for the purpose of paying legacies, and making the division therein directed. In the execution of this power, this Lombard Street property was sold by the executors, and conveyed to W. K. Howard, who took the absolute estate in fee; discharged from the trusts declared in the will, and these are in no manner involved in the present controversy. In the division of N. P. Tyson's estate, the complainants became entitled as *cestuis que trust* to $4500, being their share of the proceeds arising from the sale of the real estate, which was in the hands of George Carey, their trustee, under the will; and also to $4000 of the personalty, which was in the hands of their mother, (Mrs. R. A. Tyson,) as their guardian. These sums making $8500, were loaned to W. K. Howard, and secured by a mortgage of the Lombard Street property, executed by him on the 2nd day of October, 1852, in favor of Carey, as trustee, and Mrs. Tyson, as guardian. Afterwards, Carey resigned the trust, and Mrs.

Tyson was appointed in his place ; and then held as trustee and guardian, a mortgage on the Lombard Street property for $8500, for the use and benefit of the complainants, which constituted their whole interest in the property, the equity of redemption remaining in Howard ; who executed a second mortgage thereof to G. W. Dobbin, Esq., trustee, dated June 30th, 1853, to secure the sum of $7338.54. This was the state of the title when Howard executed the deed of trust of July 30th, 1853, by which he conveyed the equity of redemption to Mrs. Tyson, in trust for the complainants. This deed was made " for the consideration of ten dollars, and for other good causes and considerations," and conveyed all the interest of Howard in the Lombard Street property, *subject to the encumbrance of the two mortgages, before executed by him, one for* $8500 *and the other for* $7738.54. The trusts created by the deed, and the powers therein reserved to Mrs. Tyson, the trustee, are declared and expressed in the following words :

" In trust and confidence, nevertheless, and to, for and upon the uses, and to the ends, interest and purposes following, that is to say, In trust for the proper use, benefit and behoof of *Alexander H. Tyson, Jr., Mary Nevin Tyson, Henry Johnson Tyson and Nannie Key Tyson,* (the children of R. A. Tyson,) in equal proportions, share and share alike, until the said children shall respectively arrive at the age of twenty-one years, and when and as they respectively arrive at age as aforesaid, then the share or interest of him or her, shall be forthwith conveyed to them in fee : " and with the further provision also that "in case of the decease of any of the above named children of the said Rebecca A. Tyson, under the age of twenty-one years, and without issue living, the part, share or interest of the one or more so dying, shall pass to and become the estate and property of the survivors or survivor of them, and the issue of any of them, who may have died," and with the further proviso following, viz :

"Provided, however, and full power and authority is hereby given, and expressly reserved to the said Rebecca A. Tyson, at any time during the minority of her said children, or with the approbation and consent of those of them who may have arrived at the age as aforesaid, to sell and dispose of the trust property and premises as aforesaid, at and for such price or consideration as to her may seem proper, and upon receipt of the purchase, or consideration money therefor, to execute and deliver in due form of law, one or more good and sufficient deed or deeds of conveyance and assurance to the purchaser or purchasers thereof, and after paying and discharging the mortgage liens on said property, with all interest thereon, shall and will apply the residue of said purchase money if any, by re-investment in such other property as to her may seem best, to the several and same uses, trusts and purposes as are hereinbefore expressed and declared in reference to the property hereby conveyed; the purchaser or purchasers however of the above described property, not to be bound to see, or attend to the application of the proceeds of any such sale, nor shall the hereby conveyed property or premises be in any way answerable for a misapplication of such proceeds of sale."

Of the children of R. A. Tyson named in the deed two have died intestate and without issue, leaving the complainants as survivors.

After the execution of this last mentioned deed, viz: in January and February, 1855, the property was conveyed in fee to "the Convention of the Protestant Episcopal Church of the Diocese of Maryland," and immediately leased by the Convention of P. E. C. to R. A. Tyson (as trustee under the deed of W. K. Howard) for 99 years renewable forever, at a rent of $450 *per annum.*

Dobbin's mortgage which was temporarily released for the purpose only of admitting the ground rent to be created, was renewed by the execution of another mort-

gage for the same amount, of the leasehold estate then held by Mrs. Tyson, as trustee. The consideration paid by the "Convention of the P. E. C." was $7500 ; and by that means, the mortgage for $8500, held by Mrs. Tyson, as guardian and trustee of the complainants, was paid and satisfied, and this sum was by her invested in a mortgage upon certain property on Hanover Street, to the same uses as were declared in Howard's deed of July 30th, 1853. The validity of this transaction, whereby the estate was converted from fee-simple to leasehold is not assailed in the present suit. It is questioned in the bill of complaint ; but is not involved in this case, and is therefore not material to be now considered. At the time when the transaction with Mr. Latrobe took place, which is now the subject of investigation, Mrs. Tyson held as trustee for the complainants under Howard's deed of July 30th, 1853, a leasehold estate in the property, subject to the encumbrances of Dobbin's mortgage for $7738.54. This mortgage was held by George W. Dobbin, Esq., as trustee appointed by a Court of Chancery, and represented funds held by him as trustee for Mrs. Tyson for life, remainder to her husband Dr. Tyson, for life, if he should survive her, and after the death of them, remainder to the heirs of his body ; with a limitation over upon certain contingencies, to the right heirs of *Mrs. Mary Tyson,* from whom the same was derived. By the order of the Chancery Court, Dobbin the trustee, was authorized to release the mortgage held by him on the Lombard Street property, and take in lieu thereof a mortgage for the same amount of certain property on *Hanover Street,* which was held by trustees to the same uses and trusts last above mentioned. The object of this arrangement was to obtain the money required to complete certain improvements on the *Hanover Street property* then in progress. This money was obtained from Mr. Latrobe, and was secured by the mortgage now in question. The simple effect of this transaction was that

the money used to satisfy Dobbin's mortgage, to the amount of $7500, was borrowed from Mr. Latrobe, and the mortgage to him for that amount was placed upon the Lombard Street property, instead of the mortgage before held by Dobbin to the amount of $7738.54. *Thus lessening the encumbrance upon the last named property by the sum of* $238.54.

It seems to me that the argument of the appellants' counsel, that "their property has been by this proceeding subjected to an additional encumbrance," is altogether erroneous. The error proceeds from considering the property on *Hanover Street,* and that on *Lombard Street,* as if they were held in the same rights; while they were in fact held in different rights, and subject to trusts entirely different; and so far as this case is concerned, they are to be treated as altogether distinct from each other, in the same manner as if the *Hanover Street property* belonged to strangers, and the complainants had no interest therein. The investments made in the improvement of the Hanover Street property were made under the authority of the Court of Chancery, having charge of the trusts thereof. It is said that those investments have not proved safe or profitable; but that cannot affect the rights of the parties in this case, these are the same as if those investments had proved to be judicious or profitable. The fact remains undisputed that, while the money secured by the mortgage held by Dobbin on *Lombard Street,* was by the authority of the Chancery Court, invested in the improvement of the *Hanover Street property,* and secured by a mortgage thereon, the money by which it was satisfied, and the consideration for which the *Lombard Street* property was released from its operation, was borrowed from Mr. Latrobe, upon the security of the mortgage now in question. It seems to me that the equities of the parties are in no respect different from what they would have been, if Mr. Latrobe had taken an assignment of the Dobbin mortgage

instead of taking a new mortgage from Mrs. Tyson, in lieu of the Dobbin mortgage, which was released; and it seems to me to be inequitable, under these circumstances, for the complainants now to claim to hold the property free and discharged from the encumbrance of the appellee's mortgage. This claim on their part, is placed by their solicitors upon the technical ground, that the power of Mrs. Tyson, as trustee under the deed from Howard, was to "*sell the property out and out, pay off the encumbrances, and re-invest the residue;*" and that she had no power to execute the mortgage to the appellee; and consequently the same is invalid and inoperative.

If I am right in the view before expressed, that the substantial effect of the arrangement was to satisfy the existing encumbrance, and to substitute in its place another for a less amount, there could certainly be no just or valid ground of objection to the transaction. But apart from this consideration, I am of opinion that the execution of the mortgage in question was within the power given to the trustee by the deed of July 30, 1853. By the terms of that deed, which have been before recited, the trustee was directed to hold the property, subject to the encumbrances, for the use of the parties named, and to convey to them, as they may respectively arrive at the age of twenty-one years, the share to which each may be entitled. From this it appears that it was not the intention of the donor that the estate should be converted into money, nor is there anything to be found in the nature and purposes of the trust to require a sale of the property "out and out." The power to sell is conferred on the trustee, in her discretion, who is directed, in case of a sale, to pay off the encumbrances and to re-invest the residue, if any, to the same uses. I cannot perceive any good reason why it was not a valid exercise of this power, for the trustee to execute the mortgage to the appellee, which was a mere substitution of one mortgage for another.

The power to sell implies or includes a power to mortgage, unless thereby the objects and purposes of the trust would be defeated. In the early case of *Mills vs. Banks*, 3 *Peere Williams*, 1, (decided by Lord MACCLESFIELD, in 1724,) it was held that "a power to sell implies a power to mortgage, which is a conditional sale." In *Ball vs. Harris*, 4 *Myl. & Cr.*, 264, (decided in 1839,) Lord Ch. NOTTINGHAM said "So long ago as the case of *Mills vs. Banks*, it seems to have been assumed as settled, that a power to sell implies a power to mortgage, which is a conditional sale, and no case has been quoted throwing any doubt upon that proposition." (p. 269.) In that case the trustee was empowered to sell to pay debts and to re-invest in other lands.

In *Haldenby vs. Spofforth*, 1 *Beavan*, 391, the trust was under a will, which directed the trustee to make sale and dispose of all the testator's real and personal estate, and to apply the moneys to arise and be produced from the sales of his real estate, and from the rents, issues and profits thereof, in the meantime, and until such sales should be made and perfected, and the money arising from the personal estate, in the first place, to the payment of his debts, next to raise the sum of £3000, the interest whereof was to be paid to his wife for life, and after her death to be applied in the same way as the residue of the proceeds of the sales; and in the next place, to pay to each of testator's three daughters the sum of £1200 ; and "as to all the residue of the moneys to arise, be produced and got in as aforesaid," to divide the same between his six sons. The devisees in trust executed a mortgage of a part of the lands. The Master of the Rolls (Lord LANGDALE) decided that the trustees were not authorized to mortgage, *there appearing a clear intention on the part of the testator, that his whole estate should be converted.*

Where the object is to pay off the encumbrances, it is set-tled that a power to sell implies a power to mortgage.

Many cases might be cited in support of this proposition. *Hill on Trustees,* 742, *and note;* 1 *Sugden on Powers,* 513 *m.*

In *The Earl of Orford vs. the Earl of Albemarle,* 26 *L. J. Equity,* 396, the trustee was empowered to sell, and apply the proceeds in paying off certain encumbrances upon the settled estates, as well as upon other family estates. It was held by Sir L. SHADWELL, V. C., that the trustee was authorized to raise the sums required by mortgage of the estates.

In the recent case of *Stroughill vs. Anstey,* 1 *DeG., McN. & G.,* 635, (decided in 1852,) the Chancellor, Lord ST. LEONARDS, in a very able opinion, reviews the authorities, and while he decides that in the particular case before him the power of the trustees, who were directed to sell, did not authorize them to mortgage the estates; for the reason that the purposes of the trust required that the property should be converted by a "sale out and out." Yet he expressed his approval of the decision in *Ball vs. Harris,* and said, "My own opinion is, that generally speaking, a power of sale, a power of sale out and out, for a purpose, or with an object beyond the raising of a particular charge, does not authorize a mortgage; but that where it is for raising a particular charge, *and the estate itself is settled or devised subject to that charge,* there it may be proper, under the circumstances, to raise the money by mortgage, and the Court will support it as a conditional sale, as something within the power, and as a proper mode of raising the money."

The rule established by the authorities on this subject is thus succinctly stated in *Hill on Trustees,* 742, (*4th Ed.*)

"A power for trustees to sell, will authorize a mortgage by them, which is a conditional sale, wherever the objects of the trust will be answered by a mortgage; as for instance, where the trust is to pay debts, or raise portions. But where the trusts declared of the purchase money, show that

the settlor contemplated an *absolute conversion* of the estate, a *mortgage* will be an improper execution of the power."

Now, recurring to the terms of Howard's deed, I do not find in its provisions any intention that the property should be converted into money by a sale "out and out." Nor is that required in order to accomplish the purposes of the trust. The estate is settled subject to encumbrances. The power to sell is not given for ulterior purposes, requiring an absolute conversion of the property, in order to answer the objects of the trust; and therefore, I am of opinion, the trustee had power to execute the mortgage in question; and that the decree of the Circuit Court ought to be affirmed.