## Gernert *v.* Albert, Appellant.

*Trustee—Mortgage—Scire facias—Affidavit of defence.*

A trustee who purchases land with trust funds as an investment for the ·estate, may give a mortgage to secure the balance of the purchase money, :although he has no express power to incumber under the instrument by which the trust was created.

It seems that a trustee, who is empowered to sell land and re-invest the proceeds in other real estate, may, upon such reinvestment, give a pur-·chase money mortgage for a balance unpaid.

Argued Feb. 12, 1894. Appeal, No. 179, July T., 1893, by · Abraham Albert, executor and trustee of the estate of Malin-·da Albert, from order of C. P. Lebanon Co., June T., 1893, No. 346, making absolute rule for judgment for want of sufficient .affidavit of defence, in favor of plaintiff, Mary Gernert. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ. Affirmed.

· Rule for judgment for want of sufficient affidavit of defence on sci. fa. sur mortgage.

From the record it appeared that Malinda Albert, wife of Abraham Albert, died in 1879, seized of real estate and leaving

to survive her, her husband and a number of children.   By her will she gave all of her real estate to her husband, Abraham Albert, in trust for her children after his death.   Testatrix also gave the executor " authority to sell and dispose of the said real estate at such price or prices as he may deem best to the advantages of my (her) said children and to reinvest said proceeds in other real estate."   The trustee sold the land of which testatrix died seized, for $4,750, and purchased the tract of plaintiff for the sum of $3,210, subject to a widow's dower of $890.   He paid $2,210 in cash, and gave a purchase money mortgage for balance of $1,000, being the mortgage in suit. The deed was executed on April 2, 1884, and the mortgage on April 10, 1884.   Both were recorded on April 10, 1884.

Defendant filed an affidavit of defence in which he averred that, under the will of his wife, he had no authority to execute the mortgage, and that it was irregular, inoperative and void as against the trust estate.

The court entered judgment for want of a sufficient affidavit of defence, in the following opinion by McPherson, J. :

" This is a scire facias upon a purchase money mortgage, and the defence is that the mortgage is not a lien upon the land because the land was bought with trust funds and therefore became trust property the very instant the deed was delivered, passing at once beyond the power of the trustee to incumber it, even for the purchase money.

" It is no doubt true that, if a trustee has already received the legal title to land belonging to the trust, he may not afterwards incumber it, unless empowered by a court, or expressly or impliedly authorized by the instrument creating the trust. But to say, as is now said, that if a trustee lawfully uses $2,000 of trust funds to buy a farm worth $3,000, he cannot bind the land by a mortgage for the balance of the purchase money unless he has received express authority to incumber, is a proposition which does not commend itself either to the reason or to the sense of fairness.   In such a purchase, the trustee really buys no more than he pays for ; in form he receives the whole legal title, but his actual interest in the land is only what remains after he pays to the vendor from time to time the annual value of the mortgage.   In substance the vendor continues to be a part owner of the land ; he did own the whole of it, and

while he transferred the legal title with one hand, he took back a real, definite interest with the other, so that it may truthfully be said that at no point of time was his grasp so far relaxed as to enable the trust to seize what it did not buy and never was intended to have.

"Indeed, another fact in the transaction before us shows plainly how untenable is the defendant's position. The deed for the land (referred to in his affidavit) is made expressly subject to a widow's dower of $890. Surely he does not contend that the title passed to the trust free of this incumbrance, and yet, if it did not so pass, it is hard to give any reason why the vendor might not refuse to sell except subject to a second incumbrance. If the first was superior to the trust, why is not the second? In truth the transaction was a unit, the vendor saying, 'I will transfer the whole legal title to you on condition that you pay me a certain sum of money, and take the land subject to the dower which is now upon it, and subject also to my claim of $1,000 for unpaid purchase money,' and the vendee saying, 'I accept these terms.' How can the latter repudiate one term of this contract on the pretence that part of it took effect, and part of it did not.

"In fact, the defendant did not offer any argument in support of his position, but contented himself with citing Wilhelm v. Folmer, 6 Pa. 296, as a decisive authority in his favor. The syllabus of that case is imperfect and conveys a wrong impression. Neither is the case well reported, but the facts, so far as they can be gathered, present a situation very different from the one before us. There, the trust was created by an instrument to which the vendor and vendee were parties, and therefore the vendor knew the terms of the trust and the powers of the trustee. Here, the trust is created by a will of which the vendor is not averred to have had any knowledge; the vendor did not formally convey the land to be held in trust; and we are apparently asked to assume that the vendor knew of the trust and knew that the trust funds were being used, merely because the vendee is described in the deed as 'executor and trustee under the last will and testament of Malinda Albert.' It would have been easy to aver the vendor's knowledge of these facts; but, as the case stands, the vendor may as readily have supposed that the vendee (who is the father of the cestuis

que trustent) was applying his individual money to the pur-
chase, and was thus enlarging the trust estate of his children.
This defect in the affidavit is serious, and is enough in itself to
distinguish the case from Wilhelm v. Folmer.

"But there are other differences quite as important. There,
the deed was made to the trustee on Feb. 11th, but he did not
give the judgment in controversy until the 18th of that month,
and it was not entered until the 25th. Being a judgment, and
not a mortgage, this unexplained delay broke the continuity of
the transaction, (Love v. Jones, 4 Watts, 465; Jacobs's Appeal,
23 Pa. 477; Snyder's Appeal, 91 Pa. 477,) thus bringing the
case within the principle of Kauffelt v. Bower, 7 S. & R. 64.
Moreover, while the deed to Wilhelm seems to have been in
trust, the judgment which he gave appears to have been in his
individual name, and this (it is said by the court on p. 301) was
the true agreement of the parties. Mr. Justice BELL says:
' By the articles stipulating the terms of the purchase the vendor
agreed to accept Samuel's judgment note, as it is called, to secure
payment of the balance of the purchase money, which created
a mere personal obligation binding the obligor.' An effort was
made to modify this agreement by proof of an ' understanding'
that the land was to be bound, but (the court goes on to say),
' Were it even conceded that such a parol understanding, if
properly had, could be made effective to charge the trust estate
with the lien of the judgment, there is nothing in the case show-
ing such agreement by persons entitled to make it.'

"In the case before us, the incumbrance is by a mortgage
specifically pledging the land, and not by judgment. The mort-
gage is made upon the same title conveyed by the deed, whatever
that title may be; it is expressly declared to be for purchase
money; it was made only a few days after the deed, and both
were recorded on the same day only a week after the title
passed, and thus the continuity of the transaction is undoubted:
Act of 1820, § 1, 7 Sm. L. 303. A vendor can do no more
than this to show his purpose not to let go his hold upon so
much of his land as he has not been paid for; and in our opin-
ion this is enough to bind the land, even against a trustee who
is buying the land in the exercise of his trust, although he may
not have an express power to incumber.

"There is, however, another ground on which this affidavit

may be fairly declared insufficient. The will of Malinda Albert devised to the trustee certain land in trust, and empowered him to sell it 'at such price or prices as he may deem best to the advantages of my said children, and to re-invest said proceeds in other real estate . . . .' This power to 're-invest' may with great propriety be held to authorize impliedly the mortgage in question. The power to reinvest is general; the trustee is not restricted to the purchase of another piece of land precisely equal in value to the price which he may receive for the farm devised; and if he may buy a somewhat more valuable property, in the belief that the purchase is judicious, he must have the power to pledge the land for the payment of the surplus. That the trust may keep the land without paying for it —and if the mortgage had been for the *whole* purchase money, the defence would be equally good or equally bad—is a proposition which can hardly hope to be received with favor before any tribunal, and no court administering equity will accede to it unless compelled to do so by some rigid rule of law or by considerations of public policy."

*Error assigned* was above order.          •

*Bassler Boyer*, for appellant, cited: Whitely v. McFadden, 38 Leg. Int. 42; Maloney's Est., 27 Pitts. L. J. 193; Wilhelm v. Folmer, 6 Pa. 296.

*A. Frank Seltzer*, for appellee, not heard.

PER CURIAM, February 26, 1894:

This is a scire facias on a purchase money mortgage, given by the defendant to the plaintiff. The affidavit interposed by the mortgagor was adjudged insufficient, and rightly so, as we think. All that can be profitably said in relation to the proposition for which he contends will be found in the clear and able opinion of the learned judge of the common pleas. On that opinion we affirm the judgment.