# H. ARTHUR STUMP ET AL., TRUSTEES, v. CHARLES A. WARFIELD ET AL.

*Power of Sale and Reinvestment Authorizes Purchase-Money Mortgage But Not Other Mortgages—Second Mortgage Passing Only Life Interest—Payment by Purchaser at Sale Under Second Mortgage of First Valid Mortgage—Subrogation—Ejectment—Plea on Equitable Grounds—Relief in Equity After Judgment at Law.*

When a trustee is authorized to sell and dispose of the trust property and reinvest the proceeds he can execute a valid mortgage for the purchase money of property bought or any part thereof, because in such case, taking the whole transaction together, the vendee buys only the equity of redemption.

But the general rule is that a power to sell and convey does not confer a power to mortgage.

And a trustee or life tenant with power of absolute sale only is not authorized to execute a mortgage to secure money loaned for the purpose of paying taxes, interest due on a purchase-money mortgage and other expenses connected with the property. Such mortgage affects merely the interest of the life tenant and not that of the remaindermen.

When a party is an assignee of a first mortgage and also the mortgagee in a second mortgage to secure the payment of the first and also an additional sum loaned by him, a sale by the attorney named in the second mortgage is not a foreclosure of the first but passes only the interests bound by the second mortgage.

When there is a first mortgage which is a valid execution of a power contained in a deed of trust and also a second mortgage which is not a valid execution of the power but conveys only the interest of a life tenant, and the purchaser at the foreclosure sale of the second mortgage, pays off the first mortgage, he may be subrogated in equity to the rights of the first mortgagee, unless it be shown that the second mortgage was not intended to convey more than the life interest, or his right to subrogation be in some other way barred.

Land was conveyed to a trustee for the use of a *cestui que trust* for life with remainder to children. The deed empowered the *cestui que trust*, with the consent of the trustee, to grant and convey absolutely the property and the proceeds to invest in other property upon similar trusts. At the same time the trustee and the *c. q. t.* executed a mortgage to secure payment of part of the purchase-money. A year afterwards the trustee and the *cestui que trust* executed a mortgage of the property to C, reciting that she was the assignee of the first mortgage

and had loaned to the *c. q. t.* a certain sum used in paying interest due and to become due under the first mortgage and other expenses on the property, and the mortgage was given to secure this sum and also the indebtedness under the first mortgage. The attorney upon whom a power of sale was conferred by this second mortgage upon petition and advertisement referring thereto sold the property under foreclosure to a party who was the predecessor in title of the defendants in this case and the sale was finally ratified. Upon the death of the *cestui que trust*, life tenant, more than thirty years afterwards, the remaindermen brought this action of ejectment to recover said land. *Held*, that the second mortgage passed only the life interest of the *c. q. t.* because under the deed creating the trust the mortgagors had no power to mortgage any other interest as the power given to grant and convey the property absolutely did not authorize a mortgage of it for the money then loaned or a second mortgage for the purchase money.

*Held*, further, that the sale by the attorney named in the second mortgage was not a sale under the valid first mortgage because, although the same was then held by the second mortgagee, it was not assigned to the attorney and all the proceedings show that the sale was under the power contained in the second mortgage.

*Held*, further, that since the second mortgage did not bind the interest of the remaindermen they are entitled to recover in this action of ejectment after the death of the life tenant.

*Held*, further, that the defendants are not precluded by the judgment against them in their action from going into equity and seeking to be subrogated to the rights of the purchase-money mortgagee.

In the above case a plea on equitable grounds set forth that the purchaser at the foreclosure sale, defendants' predecessor in title, without reference to the interest acquired at said sale, did in fact pay to C, the holder of the first mortgage the amount thereof, which entitled the defendants to the rights of C, and that the defendants have been in exclusive possession of the land for more than twenty years. *Held*, that this plea is bad on demurrer because even if the defendants are entitled to be subrogated to the rights of the first mortgagee that is not an absolute bar to the action, and the reference in the plea to exclusive possession is not an equitable defence, but one at law, and moreover, the defendants were in possession as purchasers of the life estate of the *cestui que trust*.

*Held*, further, that the circumstances of the case are such that the claim of the defendants to subrogation to the purchase-money mortgage cannot be properly set up by a plea on equitable grounds, but that claim must be adjudicated in equity.

A defendant in ejectment is not always precluded from seeking relief in equity after judgment against him because he did not file a plea by way of equitable defense. There are some cases in which the equitable rights of a defendant in ejectment can only be determined in a Court of equity.

*Decided December 20th, 1906.*

Appeal from the Circuit Court for Baltimore County (DUN-CAN, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*William Grason* and *Edwin W. Herrman* (with whom was *H. Arthur Stump* on the brief), for the appellants.

The questions in this case may be briefly stated as follows:

Did Mrs. Warfield have the power, under the deed from Carroll, to execute the mortgages to Carroll and Ross to the extent of binding the interest of the remainder as well as her own life estate?

Were the foreclosure proceedings founded on both mortgages or only on the mortgage to Ross?

What estate in the property passed under the foreclosure proceedings?

Was the sale a valid execution of the power contained in the first mortgage?

Have not the appellants acquired a good title to the property in fee simple in view of the entry under the mortgages and the subsequent possession by them and their predecessors in title?

Have the appellees shown such a legal title as will enable them to sustain this suit?

Mrs. Warfield, with the assent of the trustee was competent to execute both mortgages. A power to sell and dispose of absolutely includes the power to mortgage for balance of purchase money. *Gernert* v. *Albert*, 160 Pa. St. 95; *Contant* v. *Servoss*, 3 Barb. 128; *Hannah* v. *Carnahan*, 65 Mich. 601; *Mavrich* v. *Grier*, 3 Nev. 52.

Such a power includes power to mortgage for the purpose of raising money to pay charges against the property. *Perry on Trusts*, 5 ed., p. 437, sec. 768; *Lewin on Trusts*, p. 497.

Mrs. Warfield, however, is not to be regarded as a mere

trustee; she was dealing with her sole and separate estate, and it is submitted was acting within her power of disposition when she executed the mortgages. *Price* v. *Bigham*, 7 H. & J. 220; *Terman* v. *Poor*, 1 G. & J. 216; *Crook* v. *Glenn*, 30 Md. 55.

The foreclosure was founded upon both mortgages.

In *Warfield* v. *Ross*, 38 Md. 91, the Court said, "An express authority having been conferred by the last mortgage to sell in case of default of payment of any of the sums secured by the first, it is unnecessary to inquire whether the power of sale conferred on the first mortgage passed by the assignment of the mortgage or the notes thereby secured to the second mortgagee or her attorney. The powers conferred by the last were amply sufficient to authorize the attorney to sell." The power of sale passed with the assignment. *Berry* v. *Skinner*, 30 Md. 567.

The second mortgage was a reaffirmance of the first and the power of sale as granted to Reynolds was conditioned upon a default, not only in the terms of a second mortgage but also of the first. The petition of Mrs. Ross in the foreclosure proceedings plainly indicates that the intention was to foreclose both mortgages. Reynolds, of course, was not mentioned as attorney in the mortgage to Carroll, but as was said by this Court in *Warfield* v. *Ross*, he had an express authority conferred upon him by the last mortgage and if the appellees here complain that no formal assignment of the mortgage to Carroll was made to Reynolds before the sale, the absence of such assignment, had it been necessary, was a mere irregularity and would be cured by the Act of 1890, ch. 187. *Madigan* v. *Bldg. Asso.*, 73 Md. 317.

But granting that there was no power in Reynolds to foreclose the first mortgage, yet the purchaser or his assignee will not be made to bear the loss. He will be substituted in the place of the mortgagee as assignee for value, to the extent of money paid out by him on account of purchase price, expenses, &c. *Queen City Bldg. Asso.* v. *Price*, 53 Md. 397, in which there was an attempted foreclosure under a *power held to be void.*

The purchaser at the foreclosure sale and his. successors in title, having been in possession of the property, claiming under said mortgages, and claiming and conveying the property as in fee simple since 1871, have, irrespective of the foreclosure proceedings acquired a good title in fee to the property. *Jameson* v. *Bruce*, 6 G. & J. 72; *Evans* v. *Merriken*, 8 G. & J. 39; *B. & O. R. R. Co.* v. *Trimble*, 51 Md. 99; *Crook* v. *Glenn*, 30 Md. 55.

If the appellees had overcome all the other insurmountable difficulties in this case they would have to establish the satisfaction by the mortgagors or themselves of the mortgages to Carroll and Ross, before they could recover in this action, otherwise they would fail under the rule requiring a strict legal title to support an action in ejectment. *Beall* v. *Harwood*, 2 H. & J. 167.

The assignment without recourse of the first mortgage has no effect upon its character as a purchase-money mortgage. All the rights of Carroll passed with the assignment.

The cases of *Tyson* v. *Latrobe*, 42 Md., and *Wilson* v. *Life Ins. Co.*, 60 Md., relied on by the appellees are not analogous to the case at bar.

*Robert H. Gordon* and *Elmer J. Cook*, for the appellees.

The whole case hinges on the question as to what estate Reynolds was enabled to convey under the mortgage in which he was named as attorney.

At the time of the decision of the case in 38 Md., it was an open question in Maryland whether a power to sell included a power to mortgage, the distinct point not having been decided. The Court in *Warfield* v. *Ross*, did not find it necessary to decide that question. Shortly afterwards the question arose in the case of *Tyson* v. *Latrobe*, 42 Md. 325. In that case, p. 337, the Court says: "As a general rule a power to sell and convey does not confer a power to mortgage." "A trust with a power of sale out and out will not authorize a mortgage."

And the Court relied on the following cases as conclusive:

*Lowery* v. *Tiernan*, 2 H. & G. 34; *Dolan & Foy* v. *M. & C. of Balt.*, 4 Gill, 394; *Huntt* v. *Townsend*, 31 Md. 338; *Haldesby* v. *Spofforth*, 7 Beavan, 390; *Perry on Trusts*, 768; *Hill on Trustees*, 714.

The case of *Wilson, trustee*, v. *Maryland Life Ins. Co.*, 60 Md. 152, is almost exactly in point. See also *Ridgely* v. *Cross*, 83 Md. 161.

Was the making of the mortgage of July 21st, 1870, by Warfield and wife to Clara D. Ross, a valid exercise of the power contained in the deed from Timothy A. Carroll to Charles D. Warfield, as trustee?

We contend that there is nothing on the face of the mortgage, in the manner of execution, or in the acknowledgment, to show that it was intended to be an execution of the power contained in the Carroll deed.

In the first place there is no reference in the mortgage to the trust contained in the deed from Carroll. It is true that the mortgage recites that the mortgage is made by Isabella Warfield, and Charles D. Warfield, trustee, but nowhere is it stated what he is trustee of, or what he is exercising power over as trustee, unless an inference could be made that it was the trust in the deed mentioned in the body of the mortgage, yet that is described as a deed to Charles D. Warfield (and not as trustee). It will also be noted that the parties sign as Isabella Warfield and Charles D. Warfield, and when we came to the acknowledgment it is made by Charles D. Warfield and Isabella Warfield, *his wife*. Nowhere in said mortgage is it expressed that the mortgage is being made by Isabella Warfield, with the consent and approbation of said trustee, and nowhere does that consent and approval appear to have been given.

Besides, we have the grant being to one Charles D. Warfield, trustee, and the power to convey vested in another. Such a power should certainly be explicitly followed and complied with, but in this case there was apparently no effort to harmonize the grant and the power.

It is manifest that the power was never exercised in execut-

ing the second mortgage, as contemplated and expressed by the deed. Very different in every respect is it from the manner in which the first mortgage was executed and acknowledged.

Under the authorities which we have cited above it is perfectly manifest that there was no power to mortgage under the provisions of the need from Carroll to Warfield. Then, what title passed by the second mortgage—that of July 21st, 1870? Nothing but the life interest of Isabella Warfield, and this she conveyed jointly with her husband. The power to sell under this mortgage carried with it only the power to sell such title as the grantors had power to convey, and that was the only life estate of the said Isabella Warfield.

The first exception at the trial of the cause below arises on the demurrer to the defendant's equitable plea. The demurrer was sustained, and in that we hold that there was no error.

*First.* Because there is no relation alleged between the purchaser Livezy, and the plaintiffs. which would authorize Livezy to pay off the mortgage. There is no allegation to show that he has anything more than a volunteer in the payment thereof?

There was nothing to show that he was compelled to pay the same to protect his interests. In fact there is no equitable ground shown for the interposition of a Court of equity.

This plea sets forth that Isabella Warfield, with the consent and approbation of her husband, Charles D. Warfield, trustee, had power under the deed from Timothy A. Carroll, to *grant and convey absolutely said property*, but does not say that they had power to mortgage. The plea further sets forth that Elias Livezy, the purchaser at the mortgage foreclosure sale, and the predecessor in title of the defendants, *without reference to the title acquired at said sale*, did, in point of fact pay to said Clara A. Ross, as assignee, for value, of Timothy A. Carroll, mortgagee, the original mortgage debt, with interest, and that this put Livezy and successors in title, in the shoes of Clara A. Ross; it further states that the mortgagee or his assignees

have, ever since 1871, been in constant, uninterrupted and ex- clusive *possession* of said property, a period of more than twenty years, and that therefore the plaintiffs, the remainder- men, are barred.

Unless the facts pleaded are such that a Court of equity would restrain the execution of the judgment, they cannot be set up as a defense in action at law. *Williams* v. *Peters,* 72 Md. 584, 586.

"The principle is well settled that the payment of an en- cumbrance by one whose duty is to pay extinguishes it, and if a purchaser desries to keep a previous encumbrance alive, he should do so by taking an assignment." * * * "The fact that the prior encumbrances were paid out of the pur- chase money cannot take it out of the rule." *Boyd* v. *Parker,* 43 Md. 201. In the case just cited, the Court says that the application of this rule is a hardship on the appellant, but that the law is too plainly settled by the decided cases in Mary- land to be now called in question.

The purchaser derived whatever title he had from the fore- closure of the second mortgage, under the power of sale con- tained in the mortgage, and his successors in title can have nothing more. If he derived a fee-simple title to the prop- erty, through the foreclosure sale, and deed to him by Luther M. Reyrolds, the attorney named in the mortgage, or if the successors in title acquired a fee by adverse possession, this could have been shown under the general issue plea in the case, and cannot be set up in a plea on equitable grounds.

The plea states that appellants their predecessors have been in constant, uninterrupted and exclusive possession of the property for over twenty years. It does not state that the possession has been *adverse.* It could not have been adverse, as to the appellees, the remaindermen, for the plea states that Isabella Warfield had a life estate in the property. The fore- closure sale carried that life estate and the purchaser entered into possession of the life estate. The statute could not begin to run against the remaindermen until the death of the life tenant. Even where the life tenant has granted the fee, his

grantee becomes a trespasser from his death, and might be ousted by the reversioner, no matter how long he may have been in possession during the life of the life tenant. *Tiedeman on Real Property*, sec. 65.

The purchaser had notice of the claim of the appellees, for they filed exceptions to the final ratification of the sale in the year 1871, and the opinion of this Honorable Court in that case, filed in the year 1873, before the purchase money was paid, was sufficient to have put him, or any subsequent purchaser, on guard.

The mortgages all having been paid, and certainly none of them having been assigned to Elias Livezy, or any of his successors in title, the appellees can have no title to the land by reason of the mortgages themselves, but must rely on the title under the power of sale in the mortgage which was foreclosed. *Boyd* v. *Parker*, 43 Md. 202.

There was no attempt on the part of any one to execute the power of sale under the original mortgage. The sale was made by Luther M. Reynolds, under the power of sale contained in the *second* mortgage, executed July 21st, 1870.

That mortgage was never executed by Charles D. Warfield, trustee, or assented to by the trustee, but only by Charles D. Warfield individually. The mortgage note of the second mortgage, as well as all interest notes, are signed by Charles D. Warfield individually, and are not signed by Isabella Warfield. The first mortgage was filed in the case as a claim, but Luther M. Reynolds was not the attorney named in this mortgage.

Boyd, J., delivered the opinion of the Court.

This is an appeal from a judgment rendered in favor of Charles A. Warfield and others (appellees) against Messrs. Stump and Herrman, trustees (appellants), in an action of ejectment brought to recover a tract of land in Baltimore County. On February 6th, 1869, Timothy A. Carroll, in consideration of the sum of $8,000, conveyed the property in controversy to Charles D. Warfield, in trust for the benefit of his

wife, Isabella, during her life or widowhood, she to collect the rents, issues, income and profits therefrom, for her sole and separate use free from the power, disposal and control of her husband, and after her death or marriage in trust for their children, etc.

Then after making provision that, in case Mr. Warfield survived his wife, upon her death the property should be for their children, etc., the deed proceeds as follows: "With power, however, to the said Isabella Warfield, with the consent and approbation of the said trustee, to grant and convey absolutely said property at any time, and the proceeds to reinvest in other property upon similar trusts as are herein declared, no purchaser, however, to be bound to see to the application of the purchase money."

On the same day "Isabella Warfield and Charles D. Warfield, her husband and trustee," gave a mortgage to Mr. Carroll to secure three promissory notes, amounting in the aggregate to $3,119. It recites that they were given in part payment of the purchase money for said property, and that the trustee united to show his consent and approbation of the conveyance.

On July 21st, 1870, Isabella Warfield and Charles D. Warfield, trustee, gave a mortgage to Clara A. Ross, which recites that she was the assignee of the mortgage and the three notes given to Carroll, which then amounted to $3,391.91, and that she had loaned Isabella Warfield $900 "which last sum the said Isabella, hath used in extinguishing claims against her incurred on account of the interest aforesaid and other debts contracted for the benefit of the property hereby mortgaged, making in all an indebtedness of four thousand dollars." It also states that Charles D. Warfield had given his note for the $900, and four notes of $120 each, being the interest on the said sum of $4,000, payable in six, twelve, eighteen and twenty-four months, respectively. The notes are all signed by him, individually. An assignment of the first mortgage and of the three notes described therein to Clara A. Ross was executed by Carroll and duly recorded. There was a power of

sale in the first mortgage to Timothy A. Carroll, or Samuel D. Schmucker, his attorney, and one in the second to Clara A. Ross, or Luther M. Reynolds, her attorney or agent. The second provides for the payment of the notes mentioned in the first, as well as the others mentioned above.

A petition was filed in the Circuit Court for Baltimore County by Clara A. Ross, showing that she was the holder of the two mortgages, alleging that they were in default, that she was desirous of selling the property and asked the Court "to accept and approve the bond of the attorney in the later mortgage named, that he may proceed to sell." Mr. Reynolds gave bond, advertised the property and on July 15th, 1871, sold it to Elias Livezy for $4,450. Exceptions were filed to the sale, but were overruled, a petition was filed to open up the decree, which was dismissed, and the case which will be hereafter referred to was brought to this Court. Finally on August 18th, 1873, a writ of possession was ordered, requiring Mr. and Mrs. Warfield to deliver possession of the property to Elias Livezy, the purchaser, which they did. On January 19th, 1874, Luther M. Reynolds, attorney, and Elias Livezy and wife conveyed the property to Eliza J. Miller—she having purchased the interest of Mr. Livezy. On March 28th, 1878, Mrs. Miller and her husband conveyed the property to William H. Reid and the appellants represent his interest, through some proceedings in the Circuit Court No. 2, of Baltimore City.

The defendant filed the general issue plea and a plea on equitable grounds. The latter was demurred to and the demurrer was sustained. The case was tried before the Court, and at the trial an agreed statement of facts and certain record evidence were offered. The Court found in favor of the plaintiffs (now appellees), and its rulings on the demurrer to the equitable plea and on the prayers present the questions before us. Before passing on the plea and prayers separately, it will be well to consider the principal points involved.

1. It is conceded by the appellees that the first mortgage— the one to Mr. Carroll—was validly executed, but it is con-

tended that the second only passed Mrs. Warfield's life interest, because the mortgagors had no power to mortgage any other interest.   It is undoubtedly the general rule that "a power to sell and convey does not confer the power to mortgage."   It was so held in *Tyson* v. *Latrobe*, 42 Md. 325, and the Court added, "Questions of this sort must depend upon the peculiar circumstances of the trust, and the intention of the parties as shown by the instrument.   A trust with a power of sale 'out and out' will not authorize a mortgage; and a trust for sale with nothing to negative the settlor's intention to convert the estate, absolutely, will not authorize the trustee to execute a mortgage."   The latter part of the quotation adopted the language of 2 *Perry on Trusts*, sec. 768.   See also *Wilson* v. *Md. Ins. Co.*, 60 Md. 150; *Price* v. *Courtney*, 87 Mo. 387; *Bloomer* v. *Waldron*, 3 Hill, 361; *Hoyt* v. *Jaques*, 129 Mass. 286; 1 *Jones on Mortgages*, sec. 129.

Although the appellees concede that the first mortgage was valid, it will be well to examine some of the authorities which announce an apparent exception to the general rule, and determine that when a trustee is authorized to sell and dispose of trust property and reinvest the proceeds, he can give a mortgage for the purchase money, or any part thereof, in order that we may see the reasons for such exception.   In *Gernert* v. *Albert*, 160 Pa. 95, the testatrix gave the trustee "authority to *sell and dispose of* the said real estate at such price or prices as he may deem best to the advantage of my said children, and to reinvest said proceeds in other real estate."   The trustee sold the trust property for $4,750 and purchased another tract for $3,210, subject to a widow's dower of $890.   He paid $2,210 cash, and gave a mortgage for the balance of the purchase money.   The deed was dated April 2nd and the mortgage April 10th, 1884, but both were recorded on the latter day and were treated by the Court as one transaction.   The Court held that the mortgage for the purchase money was valid.   In passing on that question it said, "In such a purchase the trustee really buys no more than he pays for; in form he receives the whole legal title, but his ac-

tual interest in the land is only what remains after he pays to
the vendor from time to time the annual value of the mort-
gage.   In substance the vendor continues to be a part owner
of the land; he did own the whole of it and while he trans-
ferred the legal title with one hand, he took back a real defi-
nite interest with the other, so that it may truthfully be said
that at no point of time was his grasp so far relaxed as to en-
able the trust to seize what it did not buy and never was in-
tended to have."   The Court distinguished between that case
and *Wilhelm* v. *Folmer*, 6 Pa. 296, where it was held that a
judgment given for purchase-money a week after the deed was
made, but not recorded for another week, was invalid against
the trust estate.

In *Mavrich* v. *Grier and Smith*, 3 Nev. 52, Mrs. Smith, a
*feme covert*, entered into a contract with Mavrich for the pur-
chase of a house and lot.   The transaction was consummated
by a conveyance to Grier, to be held in trust for Mrs. Smith.
As a part of the transaction, Mrs. Smith gave her note for
$2,000, the price of the house and lot.   Grier as trustee for
Mrs. Smith gave a mortgage for the two thousand dollars—
stating that it was for the purchase money of said property,
and he and Mrs. Smith signed the mortgage.   It was held that
the mortgage was valid to secure the purchase money "the
conveyance and mortgage being executed at the same time and
being part of the same transaction."

In *Constant* v. *Servoss*, 3 Barb. 128, the Court said that
when upon the sale and purchase of land, a deed is executed
and a mortgage given for the purchase money, or part thereof,
the presumption is that the deed and mortgage were executed
at the same time and the whole is considered one transaction,
and taking the whole together the vendee only acquires the
equity of redemption.   "In such case the purchaser cannot
avoid one part of the transaction and affirm the other.   He
cannot, nor can any one for him, take the land and repudiate
the mortgage.   He either holds the land subject to the mort-
gage, or he does not hold it at all."

In *Hannah* v. *Carnahan*, 65 Mich. 601, the wife conveyed

real estate to her husband in trust for their minor children. The husband was authorized to sell and convey the property in his discretion and to reinvest the moneys for the benefit of the children, and in case he survived his wife to control and govern the property as if he held it in fee-simple. He sold the property for $1,700 and with part of the proceeds purchased land from Hannah for which he paid him $800 in cash, and gave a mortgage for $800.    Afterwards Carnahan gave another mortgage on the property to Hannah for $600. The Court held that the purchase-money mortgage was valid, but "had the purchase price of the premises been in excess of the proceeds of sale of the trust property, the investment would have plainly exceeded the powers of the trustee, if such purchase had to be partly paid by a mortgage upon the land bought."

Without citing other authorities on that question, it can be seen from the above why the Courts hold that a mortgage given by a trustee for part of the purchase money of trust property, purchased by him, is valid, unless there be something in the instrument creating the trust prohibiting it. This case is even stronger than most of those cited, because the instrument creating the trust and the mortgage given in part payment of the purchase money were not only executed on the same day and constituted one transaction; but there was in reality nothing for the trust to attach to until the deed and mortgage were executed and delivered, and effect cannot be given to the one to the exclusion of the other.

2. When we come to consider the second mortgage, as we now do, the authorities and reason as clearly show that it was not a valid execution of the power contained in the deed, as those cited above show that the first mortgage was valid. The power given Mrs. Warfield in this deed was limited to her granting and conveying the property, for the purpose of reinvesting the proceeds in another property, upon similar trusts. The power to grant and convey *absolutely* did not authorize her to *mortgage* the property, or, to state it in another way by repeating from *Tyson* v. *Latrobe, supra,* "a trust for sale with nothing to negative the settlor's intention to convert the estate,

absolutely, will not authorize the trustee to execute a mortgage." The property was vested in the trustee for the benefit of Mrs: Warfield and the children, subject to the purchase money mortgage, and her power of disposition was only such as the deed gave her—to grant and convey for the purpose of reinvesting the proceeds of sale, for that is what it meant.

It was settled in this State as early as *Cooke* v. *Husbands*, 11 Md. 492, "that a *feme covert* may act in reference to her separate estate as a *feme sole*, where the settlement contains no limitations on the subject, on the principle that the *jus disponendi* accompanies the property, unless restrained in terms, or by the manifest intention of the instrument," but it was long prior to that also determined "that where a mode of alienation or of appointment is provided, it operates as a negation of any other mode, and is a paramount law governing and controlling every contract in relation to it." *Ibid*, 503. And where, as in this case, the *feme covert* was only given an equitable life estate, with power of disposition of the property *absolutely*, for a purpose clearly defined, the limitation certainly operates as a negation of any other purpose as clearly as it would the mere mode of alienation. If there be any difference, it must be in favor of the interest to be alienated, as in that case she affects the rights of others, given by the instrument.

In *Hannah* v. *Carnahan*, *supra*, the Court said, in speaking of Hannah the vendor: "But when the first mortgage was not paid, he could not take the second mortgage of $600 upon the premises, in the face of the notice he had of the terms and extent of the trust under which Carnahan held the property. Nor could any person, having notice of the trust, take such a mortgage, and enforce it against the property, as there was no power given Carnahan to execute such a mortgage." In *Price* v. *Courtney*, *supra*, the power was much more comprehensive than that given by this deed, but the Court held, after referring to many authorities, that no power was bestowed on the trustee to mortgage or otherwise encumber the property. In that case the lower Court held the deed of trust given to

secure a loan was null and void, because executed without au-
thority, but as $459.29 of the sum loaned was paid for taxes,
it decreed that there should be a lien on the trust property for
that amount, with interest and costs. The Supreme Court of Mis-
souri reversed that part of the decree, and said that the money
was not loaned for that purpose, or any special purpose, and
added: "But even had it been loaned for that specific purpose
and applied in accordance therewith, such loaning and such
application would have created no equity of subrogation or
otherwise, in favor of him who loaned the money to remove
the lien." In *Gernert* v. *Albert, supra*, the Supreme Court of
Pennsylvania said, "It is no doubt true that if a trustee has
already received a legal title to land belonging to the trust,
he may not afterwards encumber it, unless empowered by a
Court, or expressly or impliedly authorized by the instrument
creating the trust." In *Burroughs* v. *Gaither*, 66 Md. 171,
the Court said, "It is doubtless true, as a general proposition,
that where the powers and duties of a trustee are limited and
defined by the terms of the instrument creating the trust,
neither he, nor the Court, under whose administration the
trust is carried on, can exercise any others," but inasmuch as
it was the duty of the trustee to pay taxes, an order of the
lower Court was affirmed authorizing the receivers, whom the
Court had appointed, to give a mortgage to raise money in
order to redeem the trust property which had been sold for
taxes. In this case, it was the duty of Mrs. Warfield, the life
tenant, to pay the taxes, the interest on the mortgage which
was on the trust property when she acquired it and other ex-
penses connected with the property, and it is clear that she
could not afterwards encumber the fee for such purposes.
When a donee of a power to sell land also has an interest in
his own right, a conveyance of the land by him, not appearing
expressly or impliedly to be made in the execution of the
power, will be held to pass his interest only, *Ridgely* v. *Cross*,
83 Md. 161, and he certainly is presumed to have only in-
tended to include his own interest when he gives a mortgage
for his own debts.

Nor do we think that they had the power to give a second mortgage for the purchase money.    The mere fact that there was no such power given by the deed, and that the second mortgage was not embraced in the exception in favor of purchase-money mortgages, ought to be a sufficient reason for so declaring, in view of the authorities quoted, but if it could be allowed it is easy to see what the result would have been if the life tenant did not pay the interest on the first mortgage. This second mortgage shows on its face that $272.91 of interest due on the first was included in it as principal, and interest notes were given which included interest on the interest, as well as on the principal, and on the additional amount borrowed.    If that be permitted, it could be repeated from time to time and it would not take many years to double the amount of the original mortgage to the great detriment of the remaindermen.    There could have been no possible reason for giving another mortgage to secure the first, excepting to thereby raise the interest and other amounts wanted by the life tenant.    This trust was created subject to the mortgage of $3,119.00, but there was no power in Mrs. Warfield to execute another mortgage on the trust estate, as the deed did not authorize that, even with the consent of the trustee.    The second mortgage was therefore, in our opinion, of no effect against the interests of the remaindermen and was only binding on the life estate of Mrs. Warfield.

It is true that in the case of *Warfield* v. *Ross,* 38 Md. 85 (which was an appeal from the refusal of the lower Court to open the decree of ratification of sale and in which this Court also considered the final order of ratification) it was said that the powers conferred by the last mortgage "were amply sufficient to authorize the attorney to sell."    It was, however, also said that "the mortgagors, Charles D. and Isabella Warfield, were estopped by their deed from denying they had power to mortgage.    Their interest whatever it was at the time of recording the mortgage, passed by the sale when ratified, to the purchaser. *All others, not parties to the mortgage, were strangers and wholly uninjured by the sale.*    In our view

of the case, it was wholly immaterial to inquire at the instance of the exceptants what title Timothy A. Carroll conveyed to them, and unnecessary and improper to make Mr. Carroll, or the reversioners in the deed from Carroll to the Warfields, parties to the proceedings under the mortgage. *The except-ants had no ground of complaint on that score. The purchaser alone was injured by the defect of title, if any.*" It is unfor-tunate that the Court did not then determine what title was conveyed to the "exceptants"—which term included the re-maindermen, as the five children were joined in the exceptions, but it is clear that nothing was decided that can in any way affect the claim of the appellees, unless it be the mere state-ment that the attorney had power to sell. Inasmuch, how-ever, as the Court declined to determine what *interest* was conveyed by the mortgage, and consequently what was sold by the attorney, as of course he could not sell more than was conveyed by the mortgage, that question was left open. We have no doubt what it was—it was and could be nothing more than the interest Mrs. Warfield had, and that was an equitable life estate. As she had no power to mortgage the interests of the remaindermen, the trustee could not by joining in the deed give her such power. Indeed the deed does not attempt to give the trustee any power, but he was simply to give his consent and approbation to his wife's grant and con-veyance. The deed from L. M. Reynolds, attorney, and others, to Mrs. Miller, which is dated January 19th, 1874, shows that Elias Livezy had not paid any of the purchase money at that time, but Mrs. Miller then paid it. The case of *Warfield* v. *Ross* was decided May 22nd, 1873, about eight months before the purchase money was paid, and there was thus ample notice to the purchaser that the Court had declined to determine the question as to what interest had passed by the sale, and that the Court had said the interest of the remaindermen was unaffected by the sale.

Nor can there be any possible doubt that Mr. Reynolds could not sell under the first mortgage, for the simple reason that he was not named in it, but another attorney was, and it

is not claimed that it had been assigned to him. He was named in the second as the attorney or agent to sell, in case of default, and the presumption would be that he did sell under that mortgage, and the proceedings show that he did. As we have seen, the petition of Clara A. Ross, signed by him, asked the Court to approve "the bond of the attorney in the later mortgage named, that he may proceed to sell." His bond recites that mortgage alone—says that in pursuance of the power contained in that mortgage, which is accurately described, he "is about to proceed to sell the real estate in said mortgage mentioned." His advertisement likewise states that he would in pursuance of the power contained in the mortgage to Clara A. Ross (giving the date and place of record) sell the property, and his report of sale described the mortgage with the same particularity — neither the bond, advertisement nor the report of sale mentioning the first mortgage. The petition of Clara A. Ross evidently proceeded on the theory that as she held both mortgages, the sale could be made free and clear of both, and that she was willing to accept payment of both as the second included the indebtedness of the first. That was evidently the view adopted by the Court in 38 Md. 91, for it is there said ; "An express authority having been conferred by the last mortgage to sell in case of default of payment of any of the sums secured by the first, it is unnecessary to inquire whether the power of sale conferred on the first mortgagee passed by assignment of the mortgage or the notes thereby secured, to the second mortgagee or her attorney." Manifestly it did not, and could not, to the attorney, Mr. Reynolds, and if it did to Mrs. Ross, as the assignee of the mortgage, she did not make the sale under the power in that mortgage, but Mr. Reynolds made it under the second mortgage.

The appellants rely on the case of *Madigan* v. *Building Association*, 73 Md. 317, and *Queen City Building Association* v. *Price*, 53 Md. 397, but we cannt see how they reflect upon the question. In Madigan's case the Court had under consideration the Act of 1890, ch. 187, which made valid and

effectual sales made by persons who had not been named in powers of sales in mortgages. This Court sustained the validity of the statute, but it was passed to cure the defect in sales made under defective powers of sale in mortgages, and not defects in the mortgages themselves. The Court said, "The mortgage in this case was in all respects perfectly valid and formally executed; and the estate in the mortgaged premises was thereby transmitted to and vested in the mortgagee; and the only defect consisted in the delegation of the power of sale, as a summary remedy for default, under the statute." In this case it is not a defect in the power of sale—that was settled in 38th Md.—but the question is the one which was left open in 38th Md., namely, what *interest* was conveyed by the second mortgage, and sold by the attorney named therein. If a mortgage only included a *life estate*, it is not necessary to cite authorities to show that the Legislature could not pass a retroactive statute to make it cover the *fee*, and nothing of that kind was attempted by the Act of 1890.

So in Price's case, which was an attempt to have *Lowdermilk's case* in 50 Md. 175, modified or explained, this Court held that the purchaser at a sale made under a void power would, in a Court of equity, be equitably entitled, as the assignee of the mortgage to the extent he had paid the purchase money, but the question again arises, what interest did this mortgage convey? If it had been valid to pass the fee, including the remainders given the appellees by the Carroll deed, and the power of sale had been defectively executed, Price's and Madigan's cases would apply, but as the second mortgage was invalid, in so far as the remainders are concerned, an assignment of it could be of no avail.

3. This brings us to the consideration of the demurrer to the plea on equitable grounds. It shows on its face that Mr. Reynolds did not have power to sell, under the second mortgage, the interests of the remaindermen, in view of the law which we have announced above, and it does not show that he had power to sell under the first mortgage. In speaking of the latter it says, "with power in said mortgage contained to

said Carroll or his attorney to sell," but does not allege that
Mr. Reynolds was the attorney named, which in point of fact
he was not, as the mortgage shows. If the theory of the plea
was that the defendants were entitled to be subrogated to the
rights of the mortgagee in the purchase-money mortgage, it
certainly is not sufficient. It alleges that the mortgage was
paid and surely if the defendants can now be subrogated to
the purchase-money mortgage, they could not ask a Court of
equity to do that, and then declare the plaintiffs *barred* by rea-
son of the possession of the defendants and those under whom
they claim. Under no principle of equity could they be sub-
rogated for such purposes or on such terms, but if entitled to
be subrogated at all, it would only be to the extent of that
mortgage, and in order to have made this plea a valid one on
that theory, it should at least have alleged that they had made
demand on the plaintiffs for the amount of that mortgage,
which had been refused, or show their willingness to have sur-
rendered the property upon payment thereof. There is noth-
ing to suggest their willingness to do so, but on the contrary
they not only filed their plea of not guilty, but set up this plea
as a *bar to the plaintiffs recovery*, because as they alleged, they
were entitled to be in "the shoes of Clara A. Ross, as assignee
of Timothy A. Carroll, mortgagee." In other words they
claim, in a plea which is supposed to be governed by equitable
principles, that because, in equity, the plaintiffs ought to pay
them $3,119, they are not entitled to the property, even if it
is worth more, although they never offered to surrender the
property on payment of the sum they allege the plaintiffs
should in equity be required to pay.

If that was not the theory of the plea, it was defective on
other grounds. Inasmuch as the sale was under the second
mortgage, and the mortgagors had no power to convey any-
thing more than the life estate of Mrs. Warfield, the purchaser
did not acquire by the sale more than that life estate. He
and his successors were therefore presumed to have been in
possession under the life estate. They certainly could not
claim to be in possession under a mortgage which they allege

was paid off. Again, the plea does not allege when Mrs. Warfield died, or that she had been dead for twenty years before this suit was brought. Therefore the concluding part of the plea, could not apply in bar of these plaintiffs. The agreed statement of facts shows that she did not die until 1904, and hence there could have been no amendment which would have been of any avail in reference to that. Until her death, the remaindermen could not have sustained an action of ejectment, as their right to possession did not accrue until the life estate was ended. It is not easy to understand just what was meant by the conclusion of the plea. If it was intended simply to set up a holding by adversary possession, the plea was bad, because that was not an equitable defense, but one at law, in addition to the fact that it does not allege that the possession was adverse. It alleges in one place that the payment of the mortgage put the defendants and those under whom they claim in the shoes of Clara A. Ross, and in another that they had been in constant, uninterrupted and exclusive possession of the property, "a period of over twenty years, without any recognition of the mortgage title or any account on the footing thereof." It therefore cannot be set up as an existing mortgage in default, as a bar to this action. For these and other reasons the demurrer to the plea was properly sustained.

4. After what we have said it is not necessary to discuss the prayers in detail. The concluding part of the defendant's *first* is clearly erroneous. The title to said land passing under the mortgage foreclosure was not "now vested in the defendants," because the life tenant was then dead, and the possession by the defendants was not a bar to recovery by the plaintiffs. The *second* is also defective because possession was not held *against the appellees* since 1873, and there was no evidence that the appellants were claiming under the mortgage offered in evidence. The *third* was also bad, because it was not necessary that the mortgage be satisfied by the mortgagee or the plaintiffs in this suit. It was satisfied by the sale—at least the attorney of the mortgagee received more than sufficient to

satisfy it and presumably did. So far as the *fourth* is concern-
ed, it is only necessary to say that there was no evidence that
the defendants had been in possession since July, 1871, and if
they had, these plaintiffs could not sue until 1904. The *fifth*
was properly rejected because there *was* legally sufficient evi-
dence to entitle the plaintiffs to recover. The plantiff's *second*
prayer was the converse of that, and under the pleadings and
evidence we think they were entitled to recover, as the facts
necessary to recover were either admitted by the agreed state-
ment of facts, or proven by the record evidence, which was
not contradicted. The Court was only required to apply the
law to the uncontradicted and conceded facts. It is unneces-
sary to discuss the first prayer of the plaintiff.

We will only add that while we hold that the plaintiffs are
entitled to recover in this action, we do not mean to preclude
the defendants from going into equity and seeking to be sub-
rogated to the purchase-money mortgage. That was a part
of the consideration by which the life tenant and remainder-
men acquired their interest in this land, and equity and justice
demand that it should be paid, unless it is clearly established
that it was intended to sell the life estate alone, or that the
appellants are in some way barred of this relief. The pecu-
liar circumstances of this case are such that it would have
been almost impossible to properly set up the claim of sub-
rogation by the plea on equitable grounds, so as to do justice
between the parties. If the plea had been technically good,
the Court would have been justified in striking it out under
section 88 of Art. 75 of the Code. In *Park Association* v.
*Shartzer,* 83 Md. 10, this Court declined to continue an in-
junction to restrain the plaintiff from prosecuting an action of
ejectment, on the ground that the defendant could introduce
in the action at law, by equitable plea, the same matters at-
tempted to be set up in the equity proceeding, but it did not
mean to say that a defendant in an ejectment proceeding
should in all cases be precluded from going into equity, after
judgment, because he had not interposed a plea by way of
equitable defense. The statute itself recognizes the fact that

there may be cases where justice to all the parties may require the interposition of a Court of equity, and this is, in our opinion, such a case.    As this Court declined to determine in 38th Md. what interest the purchaser had acquired, the appellants had the right to have that determined in this case, and it would not have been right to require them, especially as they were simply the representatives of the heirs, to admit that the sale was only valid to pass the life estate and then seek to be subrogated to the rights of the mortgagee under the first mortgage.    *Union Hall Association* v. *Morrison*, 39 Md. 281, is another illustration of a case where the defendant, in an action of ejectment, should not be prohibited from afterwards going into equity, to obtain relief for improvements innocently put upon land recovered from him, merely because he did not set up the defense by way of plea on equitable grounds.    He should be permitted to first have the title determined at law. Other instances might be given, but we do not deem it necessary.

Of course we do not mean to be understood as determining that the appellants will be entitled to relief in equity to the extent of the purchase-money mortgage, or expressing any opinion on the subject, as that must depend upon the circumstances shown, but in view of the facts disclosed by this record and some apparent misapprehension by the profession as to the effect of our decisions on this question, we deem it proper to say what we have.

It follows from what we have said that the judgment must be affirmed.

> *Judgment affirmed, appellants to pay the costs.*